IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| MICHAEL KENEBREW, | ) | |
|---|---|---|
| Petitioner, | ) | |
| | ) | CIV-14-654-D |
| v. | ) | |
| JANET DOWLING, Warden,[1] | ) | |
| Respondent. | ) | |

SUPPLEMENTAL REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing *pro se*, has filed this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Petitioner is challenging the conviction for Murder in the Second Degree entered against him in a jury trial in the District Court of Oklahoma County, Case No. CF-2010-34. Petitioner is serving a thirty-year term of imprisonment for this conviction. Respondent has responded to the Petition and filed the relevant state court records, including a certified copy of the transcript in Petitioner's trial (hereinafter "TR__"). Petitioner has filed a reply. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B). For the following reasons, it is recommended that the Petition be denied.

I. Background

Petitioner and Mr. Jamal Colbert, Petitioner's girlfriend's sister's boyfriend, had a

---

[1]The previously-named Respondent, Terry Martin, is no longer the warden at the Dick Conner Correctional Center ("DCCC"), where Petitioner is incarcerated. Therefore, DCCC Warden Dowling is substituted as the appropriate Respondent in this habeas proceeding. Fed. R. Civ. P. 25(d); Rule 2, Supreme Court Rules Governing Section 2254 Proceedings. .

1

disagreement involving gang affiliations and a marijuana transaction. Petitioner and Mr. Colbert agreed to meet in a Wal-Mart parking lot in Del City, Oklahoma, to fight. Petitioner's friend, Mr. Glover, drove Petitioner and another friend, Mr. Davis, to the Wal-Mart. While Mr. Glover was looking for a parking spot in the Wal-Mart parking lot, Petitioner was talking on a cell phone. Mr. Glover overheard Petitioner say to someone on the phone, "So that's how you want to do it." TR vol. II, at 86.

Mr. Davis asked Mr. Glover to take him home, and Mr. Glover continued driving and exited the Wal-Mart parking lot. Mr. Glover heard Petitioner say "I aint [sic] about to fight him." TR vol. II, at 109. When their vehicle pulled up to a stop light just outside of the Wal-Mart parking lot, Petitioner told Mr. Glover and Mr. Davis to "duck" down. TR vol. II, at 88, 110. Mr. Colbert, who was wearing a hooded sweatshirt, pulled up quickly beside Mr. Glover's vehicle and stopped. Mr. Glover and Mr. Davis leaned over inside the vehicle as Petitioner had instructed them to do.

As Mr. Colbert attempted to exit his vehicle, Petitioner fired four shots at Mr. Colbert through a closed passenger side window of Mr. Glover's vehicle. Mr. Colbert, who still had one foot inside the door of his vehicle, was hit with three bullets in his back and neck and a fourth bullet in his right chest. Mr. Colbert fell down almost immediately after being shot and died at the scene. TR vol. II, at 149-151.

After hearing the shots and seeing the passenger window broken, Mr. Glover then saw Petitioner with a revolver in his hand. Petitioner pointed the gun at Mr. Glover and told him to drive away or he would "pop," or shoot, Mr. Glover. TR vol. II, at 105. When Petitioner

exited Mr. Glover's vehicle, Petitioner asked Mr. Glover and Mr. Davis if they "were going to tell on him." TR vol. II, at 99. There was no evidence presented during the trial that Mr. Colbert had a gun or any kind of weapon.

Petitioner was charged with first degree murder. At his trial, several witnesses testified, including a woman who had been waiting at the stoplight behind the vehicles occupied by Petitioner and Mr. Colbert. Mr. Colbert's girlfriend, who had been a passenger in the vehicle with Mr. Colbert at the time of the shooting, also testified, as well as Mr. Glover, several law enforcement officers, and a forensic pathologist.

Petitioner testified in his defense. Petitioner admitted he killed Mr. Colbert but stated that he did not act intentionally and that he had acted in self-defense. Petitioner's written statements and videotaped statements prepared during multiple custodial interviews were submitted as evidence. In these statements, Petitioner gave inconsistent versions of the shooting, at first stating that he did not know who had been the shooter, then stating that Mr. Glover was the shooter, and finally admitting that he shot and killed Mr. Colbert.

The jury was instructed on the offense of first degree murder, on the lesser included offenses of second degree (depraved mind) murder and first degree (heat of passion) manslaughter, as well as the defense of self-defense. The jury found Petitioner guilty of the offense of second degree murder and recommended a sentence of thirty years of imprisonment. Petitioner was sentenced accordingly.

In his direct appeal, Petitioner asserted as grounds for relief that (1) the trial court committed plain error by failing to instruct the jury on the offense of first degree

3

manslaughter by resisting criminal attempt where the victim was "attempting to commit an assault and battery against" Petitioner at the time he was killed; (2) he was denied a fair trial due to prosecutorial misconduct, specifically, the prosecution's "misrepresent[ing] a key statement in evidence by improperly attributing it to [Petitioner]" and "fail[ing] to turn over phone records in their possession despite [Petitioner's] timely discovery requests;" (3) trial counsel rendered constitutionally ineffective assistance by failing to request an instruction on the offense of first degree manslaughter by resisting criminal attempt and by failing to object to the prosecutors' "misleading" questions and argument; and (4) cumulative errors deprived him of a fair trial. Response, Ex. 1, at 14, 20, 28. The State responded in opposition to each of these claims. Response, Ex. 2.

In a summary opinion issued on May 10, 2013, the Oklahoma Court of Criminal Appeals ("OCCA") denied each of Petitioner's grounds for relief and affirmed the conviction and sentence. Response, Ex. 3. With respect to Petitioner's first claim, the OCCA found that the jury had been adequately instructed on first degree murder, second degree murder, first degree manslaughter, and self-defense, and that jury instructions on an additional form of homicide, manslaughter by resisting criminal attempt, were not warranted.

Concerning Petitioner's claims of prosecutorial misconduct, the OCCA found that "the prosecutor's comments regarding 'gun play' were based on [Petitioner's] statement during his second police interview" and no error occurred with respect to these comments. Id. at 4. As to Petitioner's claim of prosecutorial misconduct due to the State's failure to timely provide the defense with records of phone calls between Petitioner and Mr. Colbert

the day of the shooting, the OCCA rejected this claim as well. The OCCA found that "[w]hile the phone records were not provided until the second day of trial there is nothing to indicate the prosecutor deliberately withheld the phone records, or that the defense did not have time to prepare for the evidence. In fact, the State did not introduce the records nor put much emphasis on them. It was the defense who first addressed the subject of the phone records at trial." Id. at 5. Further, the court found that even if the State erred under Oklahoma's Criminal Discovery Code in failing to turn over the phone records earlier, the error "did not affect [Petitioner's] substantial rights or the outcome of the proceeding" because "the State did not rely on the phone records to prove [Petitioner's] *mens rea*" and "[t]here was substantial other evidence of [Petitioner's] conduct to establish his intent to kill." Id.

As to Petitioner's claim of ineffective assistance of counsel based on his defense attorneys' failure to raise the jury instruction issue or object to the alleged prosecutorial misconduct during trial, the OCCA applied the two-factor test established in Strickland v. Washington, 466 U.S. 668 (1984), and found that Petitioner had not shown his attorneys were constitutionally ineffective. Finding that "no errors, considered singly or cumulatively," occurred in Petitioner's trial, the court found no merit in Petitioner's claim that cumulative errors denied him a fair trial.

II. Petition

Petitioner asserts three grounds for habeas relief. In ground one of the Petition, Petitioner asserts that "the trial court was partial and bias [sic], turning a blind eye, thereby

5

denying [Petitioner] due process guaranteed by the Sixth and Fourteenth Amendments." Petition, at 3. The gist of this claim, as previously found in the Report and Recommendation entered August 26, 2014 (Doc. # 11, at 6), and Order entered October 17, 2014 (Doc. # 13, at 3-4), is that cumulative errors due to ineffective assistance of counsel and prosecutorial misconduct denied him a fair trial. <u>See</u> Petition, at 3 ("The *nisi pruis* court failed its duty as an impartial and neutral governor of the trial in that the government was allowed to run renegade absent any effective or adequate testing by defense counsel; therein, the court 'turned a blind eye' to obvious conflict of interest and inadequate representation. . . ."); Petitioner's Response Brief (Doc. # 10), at 13 ("Petitioner believes he has established many separate instances of constitutionally deficient performance by counsel, prosecutorial misconduct and improper use of contrived testimonial evidence - all while court turned a blind eye and failed Sixth Amendment duty."); Report and Recommendation (Doc. # 11), at 6; Order (Doc. # 13), at 3-4.

In ground two, Petitioner asserts that he was denied effective assistance of trial counsel. In ground three, Petitioner asserts that prosecutorial misconduct denied him a fair trial. Petitioner asserted these claims in his direct appeal, and the claims are therefore exhausted.

III. <u>Standard of Review of Constitutional Claims</u>

Under the AEDPA, a federal court cannot grant habeas relief with respect to a claim of a constitutional deprivation raised by a state prisoner that was adjudicated on its merits in state court proceedings unless the (1) state court decision was "contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The AEDPA directs courts to "ensure a level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." Williams v. Taylor, 529 U.S. 362, 386 (2000)(quoting H. R. Conf. Rep. No. 104-518, p. 111 (1996)).

A state court decision is "contrary to" established Supreme Court precedent if the state court either (1) reached a conclusion that contradicts governing Supreme Court precedent or (2) reached a conclusion different from the Supreme Court on materially indistinguishable facts. Id. at 405-406, 413. A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court "applies [the Supreme] Court's precedents to the facts in an objectively unreasonable manner." Brown v. Payton, 544 U.S. 133, 141 (2005); Williams, 529 U.S. at 407. See Price v. Vincent, 538 U.S. 634, 640-641 (2003).

"[W]hether a state court's decision was unreasonable must be assessed in light of the record the [state appellate] court had before it." Holland v. Jackson, 542 U.S. 649, 652 (2004)(*per curiam*)(citations omitted).[2] See Cullen v. Pinholster, 563 U.S. __, 131 S.Ct.

---

[2] Petitioner contends in his Reply brief that an evidentiary hearing is required because Mr. Glover's testimony at Petitioner's trial was "perjured" and the jury was not informed that the prosecutor knowingly presented false testimony at his trial. The record shows that Mr. Glover testified, and the jury was informed, a criminal charge of accessory-after-the fact filed against Mr. Glover in the case had been dismissed prior to Petitioner's trial and that Mr. Glover had agreed to cooperate in Petitioner's prosecution and to testify truthfully, although no agreement had been reached with the prosecution concerning dismissal of the charge. TR vol. II, at 68-69. Petitioner has presented nothing more than speculation and self-serving statements concerning the motivation for

7

1388 (2011)(federal habeas "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits"). Further, state-court findings of fact are presumed correct and entitled to deference. 28 U.S.C. § 2254(e)(1).

IV. Ineffective Assistance of Trial Counsel

Petitioner was represented at trial by two public defenders. Petitioner asserts that his defense attorneys provided constitutionally ineffective assistance of counsel at his trial. Although the Petition is not a model of clarity, it is assumed that Petitioner is asserting the same claims of ineffective assistance of counsel he asserted in his direct appeal.

Applying the two-part standard established in Strickland, 466 U.S. at 687-692, the OCCA rejected Petitioner's Sixth Amendment claim on its merits. In order to be entitled to habeas relief, Petitioner must demonstrate that the OCCA's decision was contrary to or unreasonably applied the governing Strickland standard.

In Strickland, the Supreme Court held that to prove a denial of the Sixth Amendment's effective assistance of counsel guarantee a defendant must show that "counsel's performance was deficient." Strickland, 466 U.S. at 687. To meet this burden, the defense attorney's performance must have "[fallen] below an objective standard of reasonableness," or, in other words, counsel's performance was not "within the range of competence demanded of attorneys in criminal cases." Id. at 687, 688. There is a strong presumption that counsel acted reasonably, and counsel's performance will not be deemed deficient if it "might be

---

or veracity of Mr. Glover's testimony. Under these circumstances, Pinholster precludes an evidentiary hearing.

considered sound trial strategy." Id. at 689.

With respect to the second prong of the analysis, counsel's errors must have prejudiced the defense. Id. at 691-92. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. "In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." Id. at 695.

In his Petition, Petitioner asserts that his defense attorneys failed to "advocate this defense," although it is not entirely clear what deficiencies are being alleged. Petition, at 9. It is assumed that Petitioner is asserting, as he did in his direct appeal, that his defense attorneys provided ineffective assistance by (1) failing to request an instruction on the offense of first degree manslaughter by resisting criminal attempt and (2) by failing to object to the prosecutors' "misleading" questions and argument.

In Petitioner's direct appeal, the OCCA first addressed Petitioner's independent claim that the trial court erred by failing to instruct the jury on the offense of first degree manslaughter by resisting criminal attempt. The OCCA found that the jury in Petitioner's trial was instructed on the offense of first degree murder, the lesser included offenses of second degree murder and first degree manslaughter, and on the defense of self-defense. The OCCA concluded that "[t]hese instructions adequately set forth the applicable law" and "[b]ased upon the evidence, instruction on an additional form of homicide, manslaughter by

9

resisting criminal attempt, was not warranted." Id. at 4.

With respect to Petitioner's related claim of ineffective assistance of counsel based on his attorneys' failure to request such an instruction or object to its absence, the OCCA found that Petitioner had not shown deficient performance or prejudice with this claim because "the evidence did not support such an instruction" under Oklahoma law, and any such request or objection to the absence of such an instruction "would have been properly denied." Response, Ex. 3, at 6.

The Supreme Court has not recognized a federal constitutional right to a lesser included offense instruction in a non-capital case. See Dockins v. Hines, 374 F.3d 935, 938 (10th Cir. 2004). In Oklahoma, the offense of manslaughter in the first degree by resisting criminal attempt requires evidence of a homicide "perpetrated unnecessarily either while resisting an attempt by the person killed to commit a crime, or after such attempt shall have failed." Okla. Stat. tit. 21, § 711(3). Petitioner argued in his appeal that he believed Mr. Colbert was attempting to commit an assault and battery. However, the OCCA found the evidence presented at trial was not sufficient to show such an attempt. Petitioner has not identified any clearly established federal precedent that would contradict the OCCA's finding that the evidence failed to establish the elements of the offense of first degree manslaughter by resisting criminal attempt under Oklahoma law. Additionally, there was substantial evidence of Petitioner's guilt presented at the trial. The OCCA's resolution of this issue did not conflict with or unreasonably apply Strickland's governing standard.

As a second basis for his claim of ineffective assistance of counsel, Petitioner asserts

that his defense attorneys provided constitutionally ineffective assistance by failing to object to certain questioning and statements made by the prosecutors during the trial. On appeal, Petitioner argued in a separate proposition alleging prosecutorial misconduct that the prosecutors "misrepresented a key statement in evidence by improperly attributing it to" Petitioner. Response, Ex. 1, at 20. Referring to his second written statement made to the police, Petitioner argued that the prosecutors had intentionally attributed to Petitioner a statement made by Mr. Glover that there might be "gun play" at the Wal-Mart meeting with Mr. Colbert. Id. at 21-22. In his Sixth Amendment claim asserted in his appeal, Petitioner asserted that his defense attorneys provided ineffective assistance when they did not object to the prosecutors' "misleading questioning and argument" concerning this statement Id. at 30.

Petitioner's claim requires a recitation of a portion of the evidence presented to the jury at Petitioner's trial. In Petitioner's first written statement made during a custodial interview on December 29, 2009, Petitioner stated that he had "called up a friend for a ride to go and fight" Mr. Colbert, that they went "to Wal Mart to meet up but he was nowhere around." As they were leaving Mr. Colbert called Mr. Glover's phone "and was like I'm behind you, he pulled up next to the car [and] got ready to hop out and I ducked. Next thing I know I heard gun shots ring out. I don't know who was shooting all I know is that there were shots." State's Exhibits, Ex. 35.

In Petitioner's second written statement made during a custodial interview about an hour later on the same date Petitioner stated that he had received a video from Mr. Colbert

saying "come up there and fight. . . . So I called [Mr. Glover] to come and pick me and my homeboy [Mr. Davis] up from my house. He pulled up [and] I showed him the video on my b.m. [sic] phone . . . and he said something wasn't right because [Mr. Colbert] was by hiself [sic] in the video n that if they wana gun play whateva [sic]." State's Exhibits, Ex. 36. In that statement, Petitioner stated that Mr. Glover "said duck," and Mr. Glover was the shooter. Id.

In a third statement made during a custodial interview on January 14, 2010, Petitioner stated that Mr. Colbert "sent a video to my baby moma phone tellin[g] me to come up there [as] he was waiting on me. And so I called [Mr. Glover] back sayin[g] somethin[g] wasn't right [as] he was in the video by himself and to bring that gun. [Mr. Glover] shows up and we rode up there." In this statement, Petitioner finally admitted that he had shot Mr. Colbert. State's Exhibits, Ex. 37.

During Petitioner's trial, the evidence included not only Petitioner's written statements but also video recordings of Petitioner's interviews with police. In one of those interviews, Petitioner described a conversation between himself and Mr. Glover in which Petitioner admitted he had said to Mr. Glover, "Something is not right. You know what I'm saying. I told him bring [the gun] just in case, you know what I'm saying, if it go down like that." State's Ex. 34. See Response, Ex. 2, at 28.

The following exchange took place during cross-examination of Petitioner at his trial:

Prosecutor: "Do you agree in your second statement that you said if there's going to be gunplay, so be it?"
Petitioner: "I really honestly don't remember saying that."
Prosecutor: "You've got it up there; don't you? Let's look. It should be the second statement, . . . . You said whatever. Would you agree that's what you wrote in there? Something wasn't right because [Mr. Colbert] was by

12

himself in the video, and if they wanted gunplay, it's whatever."
Petitioner: "I wrote it."
Prosecutor: "So even with that mentality, you're pretty nonchalant. If there was going to be gunplay, whatever. I got a gun now cause [Mr. Davis's] here."
Petitioner: "Yes. sir."
Prosecutor: "Now when you think that there might be gunplay, does that mean that you thought there might be an idea that you could get shot at?"
Petitioner: "I mean at the - really - I don't know. I don't know how to really answer that."
Prosecutor: "How do you do playing gunplay?"
Petitioner: "I mean, like a lot of - a lot of times, I've been seeing people fight, somebody get beat up, and then they don't take the fight - they don't take it well. And that's the - the result in that sometimes."
Prosecutor: "So again you thought by there could be gunplay, whatever, that there was a chance of - if you went up to Walmart that you could get shot at?"
Petitioner: "I wasn't really - I don't know. I don't know how to answer that correctly."
Prosecutor: "There is no correct answer. There's just the truth."
Petitioner: "No. No."

TR vol. III, at 129-30. Defense counsel did not object to this questioning. During closing arguments, the prosecutor referred four times to Petitioner's statement concerning "gunplay," emphasizing that Petitioner had taken a gun with him to the Del City Wal-Mart on the day of the shooting. TR vol. IV, at 55, 80, 89, 115. Defense counsel did not object to this argument.

The OCCA addressed this claim in Petitioner's direct appeal as it related to his claim of prosecutorial misconduct and found that "the prosecutor's comments regarding 'gun play' were based on [Petitioner's] statement during his second police interview. Counsel enjoy a right to discuss fully from their standpoint the evidence and the inferences and deductions arising from it. . . . There was no error in the prosecutor's comments, thus no plain error." Response, Ex. 3, at 4.

The OCCA also rejected Petitioner's ineffective assistance claim based on his defense

13

attorneys' failure to object to the prosecutors' questioning and closing arguments. Although "it does not necessarily follow that there can be no prejudice under *Strickland* when there is no plain error under Oklahoma's plain error standard," Williams v. Trammell, 782 F.3d 1184, 1199 (10th Cir. 2015), the OCCA went beyond its finding that no plain error was shown and specifically addressed the Strickland standard. The OCCA found that under Strickland Petitioner had not shown prejudice. Specifically, the OCCA determined that "[d]efense counsel's failure to object to the prosecutor's comments about 'gun play' does not satisfy the requirements of *Strickland* because such objections would have been properly overruled" under state evidentiary law. Response, Ex. 3, at 6.

Petitioner has not demonstrated that the OCCA's decision conflicted with or unreasonably applied the Strickland standard, and he is not entitled to habeas relief concerning his Sixth Amendment claims.

V. Prosecutorial Misconduct

Petitioner contends, as he did in his direct appeal, that the prosecutors committed misconduct during his trial when they misstated the evidence by attributing to Petitioner the statement "if they wanna gun play, it's whateva." Petition, at 19. The OCCA rejected this claim of prosecutorial misconduct and found that no error occurred in the prosecutors' comments as they were based on Petitioner's statements during his second custodial interview. When, as here, the alleged misconduct by a prosecutor does not involve the denial of specific constitutional right such as the right against self-incrimination, "a prosecutor's improper comments will be held to violate the Constitution only if they so

14

infected the trial with unfairness as to make the resulting conviction a denial of due process." Parker v. Matthews, __ U.S. __, 132 S.Ct. 2148, 2153 (2012)(*per curiam*) (quotation omitted). This "standard is a very general one," and it therefore provides "courts more leeway in reaching outcomes in case-by-case determinations." Id. at 2155 (quotation and ellipses omitted).

In other words, the prosecutor's misconduct must be "of sufficient significance to result in the denial of the [petitioner]'s right to a fair trial." Greer v. Miller, 483 U.S. 756, 765 (1987). In considering a claim of prosecutorial misconduct under this standard, the prosecutor's comments or actions must be viewed in the context of the entire trial. Id. at 765–66.

Petitioner has not shown misconduct that deprived him of a fair trial. Petitioner was asked during the trial whether he made the statement concerning gunplay, and his response was, "I wrote it." TR vol. III, at 129-30. Moreover, Petitioner gave three very different versions of the crime in his written custodial statements and recorded interviews. In his first written statement Petitioner stated he did not know who had shot Mr. Colbert. In his second custodial statement, Petitioner vaguely stated "he said something wasn't right because [Mr. Colbert] was by hiself [sic] in the video n that if they wana gun play whateva." State's Exhibits, Ex. 36. In this statement, Petitioner stated Mr. Glover had shot Mr. Colbert.

But in a custodial interview conducted on January 14, 2010, Petitioner admitted that he took a gun when he went to the Wal-Mart to meet Mr. Colbert. State's Exhibits, Ex. 37. Petitioner stated that he "called [Mr. Glover] back sayin[g] somethin[g] wasn't right he was

15

in the video by himself and to bring that gun." State's Exhibits, Ex. 37. In this interview that was recorded and admitted at trial, Petitioner clearly stated that HE had said to Mr. Glover, "Something is not right. You know what I'm saying. I told him bring [the gun] just in case, you know what I'm saying, if it go down like that." State's Ex. 34, at 26:30. See Response, Ex. 2, at 28.

Petitioner had the opportunity during his trial to testify and to respond to the prosecutor's questioning on cross-examination concerning this statement. Petitioner did not deny making the statement about "gun play." Petitioner admitted in a recorded interview and in a written statement that he took a gun to the Wal-Mart meeting with Mr. Colbert in case there was a gun-based confrontation with Mr. Colbert.

Petitioner's custodial statements provided circumstantial evidence with respect to his intent. The Tenth Circuit Court of Appeals recently explained the use of circumstantial evidence:

> Circumstantial evidence is indirect and thus it requires its proponent to ask that the jury draw a particular inference from certain information. Inferences vary in their strength, and the fact finder must evaluate whether an inference makes sense and weigh it accordingly. When a litigant argues that a piece of circumstantial evidence should lead the jury to a certain conclusion, that litigant is not committing misconduct or misstating the evidence - he is, to be blunt, lawyering.

United States v. Vann, 776 F.3d 746, 760 (10th Cir. 2015). "Given the abstract nature of the mens rea, this tactic is as uncontroversial as it is ubiquitous." Id. at 761.

Petitioner's trial was not rendered constitutionally unfair by the prosecutor's questioning on cross-examination or comments during closing arguments that relied on

16

reasonable inferences from circumstantial evidence to show Petitioner's state of mind at the time of the shooting. Petitioner has not demonstrated that the OCCA's decision was contrary to or an unreasonable application of the governing standard.

Petitioner also contended in his direct appeal that the prosecutors committed misconduct in violation of his right to a fair trial when the prosecutors failed to timely turn over telephone records in their possession. The record reflects that on the second day of trial defense counsel informed the trial court that she had just received cell phone records of calls on Mr. Colbert's cell phone between Petitioner and Mr. Colbert, and she asked that the cell phone records not be allowed into evidence because the prosecutors had not timely complied with the defense's discovery requests. TR vol. II, at 24.

The trial court inquired as to when the prosecutors became aware of the cell phone records. One of the prosecutors responded that the attorneys assigned to both prosecute and defend the case had changed over the course of the prosecution, and the prosecutor could not tell the court when the cell phone records were received in the district attorney's office. Id. at 27. The trial court did not rule on the request to exclude this evidence and stated that a ruling would be made "when the time comes that the State wants to introduce this information." Id. at 33.

As the OCCA found in its decision, there was "nothing to indicate the prosecutor deliberately withheld the phone records, or that the defense did not have time to prepare for the evidence." Response, Ex. 3, at 5. The prosecution did not seek leave to admit the phone records into evidence, and "[i]t was the defense that first addressed the subject of the phone

records" during Petitioner's testimony at trial. Id. The OCCA found that even if the State violated Oklahoma's Criminal Discovery Code by not disclosing the phone records prior to trial, Petitioner had not shown he was prejudiced by the error as "the State did not rely on the phone records to prove [Petitioner's] *mens rea*" and "[t]here was substantial other evidence of [Petitioner's] conduct to establish his intent to kill." Id.

Petitioner has not cogently argued that the prosecutor's delay in disclosing the victim's cell phone records rendered his trial fundamentally unfair. Petitioner has not shown that the OCCA's holding was unreasonable or conflicted with Supreme Court precedent.

## VI. Cumulative Errors

In his final claim, Petitioner asserts that the above-described errors, when considered cumulatively, deprived him of a fair trial. "In the federal habeas context, cumulative-error analysis 'aggregates all constitutional errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless,' an analysis ... undertake[n] only if there are at least two errors." Fairchild v. Trammell, __ F.3d __, 2015 WL 1843529, *20 (10th Cir. 2015)(quoting Lott v. Trammell, 705 F.3d 1167, 1223 (10th Cir. 2013)). See Moore v. Reynolds, 153 F.3d 1086, 1113 (10th Cir. 1998)(cumulative error analysis "applies where there are two or more actual errors; it does not apply to the cumulative effect of non-errors").

In Petitioner's direct appeal, the OCCA found that none of the claimed errors, either individually or considered together, prejudiced Petitioner. Petitioner has not demonstrated that any errors of a constitutional magnitude occurred at his trial, and therefore he has not

shown that the OCCA' decision was contrary to or an unreasonable application of clearly-established federal precedent.

RECOMMENDATION

Based on the foregoing findings, it is recommended that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be DENIED. The parties are advised of their respective right to file an objection to this Supplemental Report and Recommendation with the Clerk of this Court by  June 17th, 2015, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Supplemental Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States of America, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.").

This Supplemental Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this  28th  day of  May , 2015.

*Gary M. Purcell*
GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE